OPINION OF THE COURT
 

 Ciparick, J.
 

 After a jury trial, defendant was convicted of attempted murder in the second degree. On this appeal, defendant challenges the prosecution’s use of portions of his Grand Jury testimony to impeach him on cross-examination. Although defendant concedes that he voluntarily waived his immunity and testified before the Grand Jury, he argues that the Trial Judge improperly admitted his Grand Jury testimony because it was given when he was incompetent, rendering the testimony inherently unreliable and inadmissible. We conclude that the Trial Judge, in the exercise of his discretion, properly
 
 *458
 
 denied the motion
 
 in limine
 
 and admitted defendant’s Grand Jury testimony for the limited purpose of impeachment.
 

 On February 19, 1988, defendant was arrested in connection with his involvement in a skirmish in a lower Manhattan mosque. Defendant allegedly lunged at the spiritual leader of the mosque, yelling "I will kill you,” and punched him. A group of worshippers purportedly restrained defendant, who then retrieved a knife concealed in his clothing. While lashing out at the individuals restraining him, defendant struck the complainant in his forearm and lower back, causing injuries which required medical attention.
 

 On February 22, 1988, defendant appeared in Criminal Court with counsel, and was arraigned on a felony complaint charging him with attempted murder in the second degree (Penal Law §§ 110.00, 125.25), assault in the second degree (Penal Law § 120.05 [2]) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]). During this proceeding, defendant advised the court of his intent to testify before the Grand Jury. Defendant’s competence was not raised as an issue at this time.
 

 Two days later, defendant appeared before the Grand Jury, accompanied by counsel and an interpreter. Defendant proceeded to waive his immunity. The prosecutor, however, directed defendant to confer with his attorney before accepting the waiver and testimony. After a 20-minute conference with his counsel outside the presence of the Grand Jury, defendant swore that his waiver was voluntary and that he wished to testify
 
 (see,
 
 CPL 190.45 [2]). At no time was defendant’s competency or the voluntariness of his waiver or testimony in issue. The Grand Jury returned an indictment charging defendant with one count of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and assault in the second degree (Penal Law § 120.05 [2]).
 

 At the March 14, 1988 arraignment on the indictment, the trial court entered a plea of not guilty on behalf of defendant, who appeared with counsel. Now, for the first time, the issue of defendant’s competency was raised, and the trial court ordered that defendant undergo a competency examination pursuant to CPL 730.30. Approximately three weeks later, two psychiatrists independently determined that defendant was suffering from a psychiatric disorder that deprived him of the capacity to understand the proceedings against him or to assist in his own defense. The trial court executed an order
 
 *459
 
 committing defendant for treatment. Fifteen months later, after a regimen of medication and counselling, defendant was declared fit to proceed. Eight months thereafter, defendant’s trial commenced.
 

 At the trial, four eyewitnesses testified to the circumstances of the skirmish. Before defendant took the stand on his own behalf, defense counsel moved to preclude use of the Grand Jury testimony to impeach defendant because of defendant’s alleged incompetency at the time of that proceeding. Counsel argued that defendant’s Grand Jury testimony was not rational and, at that time, defendant was unable to rely on his advice. In fact, defendant testified before the Grand Jury despite his counsel’s advice to the contrary. Counsel further asserted that defendant had expressed his distrust of the interpreter assigned to assist him before the Grand Jury, whom he had just met, a sentiment counsel indicated defendant harbored against him, as well. The Trial Judge denied the motion, and the People introduced portions of the Grand Jury testimony that were inconsistent with defendant’s trial testimony on several minor points.
 

 The jury returned a verdict convicting defendant of attempted murder in the second degree. Thereafter, the trial court sentenced defendant to an indeterminate prison sentence of 8 to 24 years.
 

 The Appellate Division affirmed the conviction and sentence, rejecting defendant’s argument that his Grand Jury testimony was involuntary and inadmissible for any purpose
 
 (see, People v Gelikkaya,
 
 197 AD2d 405). A Judge of this Court granted leave to appeal, and we now affirm.
 

 Defendant’s appeal is premised on the ground that he was incompetent at the time he appeared before the Grand Jury, and was therefore unable to understand the proceedings or to rationally consult with counsel at the time he waived his immunity and testified before the Grand Jury. As there exists a presumption of sanity, " '[s]anity being the normal and usual condition of mankind’ ”
 
 (People v Silver,
 
 33 NY2d 475, 481, citing
 
 Brotherton v People,
 
 75 NY 159, 162;
 
 see also, People v Lancaster,
 
 69 NY2d 20, 30,
 
 cert denied
 
 480 US 922), defendant is presumed to have been competent at the time of the Grand Jury proceeding. Just as it is an established fact that a prior history of mental imbalance does not in itself prove insanity at the time of judgment
 
 (see, People v Boundy,
 
 10 NY2d 518, 521;
 
 People v Gensler,
 
 72 NY2d 239, 244,
 
 cert
 
 
 *460
 

 denied
 
 488 US 932), mental illness subsequent to indictment is not evidence of incompetency at the time of the Grand Jury proceeding. Even a mentally ill person may give evidentiary testimony provided that individual has sufficient intelligence to understand the nature of an oath and to give a reasonably accurate account of the circumstances in issue
 
 (see, People v Rensing,
 
 14 NY2d 210, 213).
 

 Since the inception of this action, defendant was represented by competent counsel at all times. Defendant was encouraged to consult with counsel both before and during the Grand Jury proceeding, and the transcript reveals that he availed himself of these opportunities. At no time during the Grand Jury proceeding did defense counsel, who was in the best position to assess defendant’s capacity, raise the issue of defendant’s fitness to proceed or request an examination pursuant to CPL 730.30.
 

 At trial, defense counsel’s motion to preclude the admission of the Grand Jury testimony on the ground that defendant was incompetent when he testified before the Grand Jury was denied, and the Trial Judge admitted the testimony strictly for impeachment purposes. By allowing the prosecution to use the testimony for impeachment purposes, the Trial Judge necessarily found that when defendant testified before the Grand Jury he was able to consult with counsel " ' "with a reasonable degree of rational understanding * * * and * * * ha[d] a rational as well as factual understanding of the proceedings against him” ’ ”
 
 (People v Francabandera,
 
 33 NY2d 429, 436, citing Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 730.10, at 332 [1971 ed]). As noted by the Appellate Division, although defendant’s remarks before the Grand Jury were not a model of clarity, the portions of the testimony used by the prosecutor to impeach him were rational responses to the questions posed to him
 
 (see, People v Gelikkaya,
 
 197 AD2d, at 406,
 
 supra).
 
 Thus, neither defendant’s conduct at the Grand Jury proceeding nor the psychiatric examinations conducted subsequent to that time rebutted the presumption that defendant was competent at the time of his Grand Jury testimony.
 

 Once the selected portions of the Grand Jury testimony were used to impeach defendant on cross-examination, the relevant issue became the credibility of defendant’s trial testimony, an issue the jury obviously resolved against defendant
 
 (see, People v McElvaine,
 
 125 NY 596, 604). The Trial Judge’s
 
 *461
 
 determination that defendant’s Grand Jury testimony was admissible and reliable to the extent it was voluntary
 
 (see, People v Hulls,
 
 76 NY2d 190, 198;
 
 Harris v New York,
 
 401 US 222, 225-226) was not an abuse of discretion. There is nothing in the record that suggests defendant did not comprehend the significance of these statements or the nature of the proceeding in which he voluntarily gave this testimony, and it is the Trial Judge who is best equipped to evaluate the admissibility of such testimony.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order affirmed.